**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMCA-025**

**Filing Date: January 30, 2020**

**No. A-1-CA-36397**

**JEFFREY W. SANDEL,**

Plaintiff-Appellant,

v.

**JERRY W. SANDEL, individually,
and in his capacity as Personal
Representative of THE ESTATE
OF NANCY M. SANDEL,
and in his capacity as Trustee
of THE JERRY W. AND NANCY
M. SANDEL TRUSTS,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Louis E. DePauli, Jr., District Judge**

Released for Publication June 2, 2020.

Bustos Law Firm, P.C.
Dustin N. Slade, Of Counsel
Fernando M. Bustos
Lubbock, TX

for Appellant

Hurley Toevs Styles Hamblin & Panter PA
Gregory W. MacKenzie
Lalita Devarakonda
Albuquerque, NM

Gurley Law Firm
Curtis Gurley
Aztec, NM

for Appellees

**OPINION**

**MEDINA, Judge.**

**{1}**     Plaintiff Jeffrey Sandel appeals the district court's order dismissing his complaint on the grounds that Plaintiff was collaterally estopped from bringing his tort claims and barred by the statute of limitations for bringing a claim under the New Mexico Uniform Probate Code (the Probate Code). We affirm.

## BACKGROUND

**{2}**     This action arises out of an intergenerational dispute over the proceeds of a marital trust. Plaintiff is the adult son of Defendant Jerry Sandel and his now-deceased wife, Nancy Sandel. Defendant and Mrs. Sandel jointly executed the Jerry W. and Nancy M. Sandel Revocable Trust (the Trust) in 1974. The Trust was amended and restated several times over the years, with the last amendments and restatements occurring in June 1995 (the 1995 Amendment), January 1999 (the 1999 Restatement), and May 2001 (the 2001 Restatement). Following Mrs. Sandel's death in 2001, Defendant, the personal representative of Mrs. Sandel's estate, informally probated her estate in August 2002. As we describe in detail below, Plaintiff first brought suit against Defendant, individually, as well as in his capacity as the personal representative of Mrs. Sandel's estate and trustee of the Trust in federal court, and when those claims were dismissed, Plaintiff then filed this action.

## The Federal Lawsuit

**{3}**     In October 2015, fourteen years after Mrs. Sandel's death, Plaintiff filed suit in federal district court (the Federal Suit) against Defendant, alleging fraud, breach of trust, and conversion. Plaintiff's complaint alleged that under the original terms of the Trust, following the deaths of both Defendant and Mrs. Sandel, the Trust principal was to be distributed in equal parts to Plaintiff and his two siblings over the course of time until they reach thirty-five years of age, at which time they could demand their remaining full share of the marital trust principal. However, the Trust was amended in 1995 and then amended and restated in 2001 in such a way to ultimately eliminate Plaintiff's right to demand the principal of the Trust—which Plaintiff claimed was in the millions of dollars. A handwriting expert, who subsequently reviewed the 1995 Amendment and 2001 Restatement, concluded that Mrs. Sandel's signatures on two instruments were forged. The complaint further alleged that Defendant: (1) knew that Mrs. Sandel's signature was forged on the two instruments; (2) intentionally misled Plaintiff by telling him that Defendant and Mrs. Sandel "modified the terms of [Mrs. Sandel's] testamentary documents such that Plaintiff . . . had no inheritance rights, present or future, to any of the assets in [Mrs. Sandel's] estate[;]" and (3) fraudulently concealed the existence of the Trust by telling Plaintiff in March 2009 and February 2010 that "there was no trust in which Plaintiff . . . had any interest." As a result of Defendant's representations, Plaintiff claimed that he did not contest the validity of the Trust or the disposition of Mrs.

Sandel's estate until he was able to obtain a copy of the 1995 Amendment and 2001 Restatement through discovery in a separate lawsuit.[1]

**{4}** Defendant filed a motion for judgment on the pleadings, which the federal district court granted as to the counts for fraud, breach of trust, and conversion. *Sandel v. Sandel*, No. CV-15-924 MCA/KK, 2016 WL 7535356 (D.N.M. July 18, 2016). In doing so, the federal court found that those claims were foreclosed by *Wilson v. Fritschy*, 2002-NMCA-105, 132 N.M. 785, 55 P.3d 997, which "established that 'when the interference with inheritance takes place in the context of a will or other testamentary device that can be challenged in probate,' the plaintiff must utilize the Probate Code, rather than tort law, to obtain relief." *Sandel*, 2016 WL 7535356, at *1 (quoting *Wilson*, 2002-NMCA-105, ¶ 12). Although the federal district court dismissed Plaintiff's tort claims, it noted that Plaintiff could potentially pursue his fraud claim under NMSA 1978, Section 45-1-106(A) (1975), a Probate Code provision that allows any person to obtain "appropriate relief" within two years of discovering fraud "perpetrated in connection with any proceeding or in any statement filed under the . . . Probate Code or . . . fraud . . . used to avoid or circumvent the provisions or purposes of the code." *See Sandel*, 2016 WL 7535356, at *1.

**The State Lawsuit**

**{5}** Following the dismissal of the Federal Suit, Plaintiff filed the instant action in state district court in August 2016. Plaintiff's complaint alleged fraud, breach of trust, and tortious interference with an expected inheritance based largely on the same facts he alleged in the Federal Suit. Plaintiff further alleged that the same handwriting expert who reviewed the 1995 Amendment and 2001 Restatement believed that the 1999 Restatement was likely forged as well. In addition to the above causes of actions, Plaintiff contended that Defendant breached his duty as personal representative to Mrs. Sandel's estate by intentionally failing to inform Plaintiff of the estate's informal probate, which Plaintiff claimed he did not learn of until 2009. Although Plaintiff admitted learning in 2009 that Mrs. Sandel's estate had been probated in 2002, the complaint alleged that Plaintiff did not discover the fraud until 2015.

**{6}** In response, Defendant filed a counterclaim against Plaintiff for malicious abuse of process. Additionally, Defendant moved to dismiss for failure to state a claim, arguing that the Federal Suit barred Plaintiff's tort claims under the doctrine of res judicata. Defendant also argued that Plaintiff's claims were time-barred under NMSA 1978, Section 46A-6-604(A) (2007), which provides that "[a] person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of . . . three years after the settlor's death; or . . . one hundred twenty days after the trustee sent the person a copy of the trust [along with a notice containing certain information]." Alternatively, Defendant argued that Plaintiff's claims were time-barred because Plaintiff knew or should have discovered the alleged fraud in 2009.

---

1Plaintiff did not specify when this lawsuit took place.

**{7}** Defendant attached several exhibits in support of his motion, including multiple affidavits from his estate planning attorney in which the attorney described his personal involvement with drafting the provisions of the Trust—including the 1995 Amendment, 1999 Restatement, and 2001 Restatement—as well as his involvement with the informal probate of Mrs. Sandel's will. Defendant's attorney also attested that he met with Plaintiff on June 5, 2002, to go over Mrs. Sandel's will and the disposition provisions of the Trust and that he sent Plaintiff a complete copy of Mrs. Sandel's will and the 2001 Restatement on April 9, 2009. Additionally, Defendant attached a copy of Mrs. Sandel's will devising her entire estate (besides personal and household effects) to the Trust, as well as copies of the 1995 Amendment, 1999 Restatement, and 2001 Restatement— including the unnotarized signature pages with Mrs. Sandel's purportedly forged signatures.

**{8}** In addition to the above, Defendant attached two other exhibits to the motion. One was a copy of an email Plaintiff sent to Defendant's attorney in 2009 in which Plaintiff wrote:

> I received a copy of the [Trust] . . . you sent me on April 9, 2009 and of course I plan on challenging it in court. I have retained [an attorney] in Farmington and have sent a copy to my family law attorney in California . . . and given him permission to give a copy of the trust to other attorneys that may be interested in representing me. As you know [Defendant] has repeatedly lied to me about the [T]rust and on numerous occasions has told me there is no trust and then later told me that all of my mother's trust is in his name. . . . [Defendant] has constantly defamed me and lied to me about the [T]rust that was originally set up for my comfort, support, and welfare which instead has been used to manipulate, defame, abuse, and hurt me. . . . [Defendant] is liable for damages that have been caused by his neglect and mishandling of an estate that he pretends to be the sole owner of which is not true. I will personally sue your client for damages and I will win.

The other was a short, six-paragraph affidavit Plaintiff submitted in the Federal Suit in which Plaintiff admitted sending an e-mail in 2009 threatening to challenge the Trust in court. In that affidavit, Plaintiff attested that "[i]n or around 2001, shortly after the death of [Mrs. Sandel], . . . Defendant . . . told [Plaintiff] that he and [Mrs. Sandel] had modified the terms of [her] testamentary documents such that [Plaintiff] had no inheritance rights, present or future, to any of the assets in [Mrs. Sandel's] estate" and that Defendant told Plaintiff in 2009 and 2010 that "there was no trust in which [Plaintiff] had any interest." Plaintiff also attested that he did not discover the purported forgeries until 2015 because Mrs. Sandel's signatures "on the 1995, 1999, and 2001 [T]rust instruments here in dispute looked similar enough to hers that [Plaintiff] did not question them when [he] saw them." In sum, over sixty pages of supporting documents were attached to Defendant's motion to dismiss.

**{9}** Plaintiff responded, setting forth his "separate statement of undisputed facts," to which he attached the same affidavit of his from the Federal Suit and a copy of the same e-mail Plaintiff sent to Defendant's attorney. Plaintiff also attached various pleadings from the Federal Suit, including the federal district court's order granting judgment on the pleadings. Plaintiff argued that his tort claims were not barred by res judicata because the Federal Suit did not resolve the merits of his challenge to the validity of the Trust under the Probate Code. Next, Plaintiff argued—relying on his affidavit from the Federal Suit—that his claims did not accrue until he discovered the purported forgeries in 2015. Lastly, Plaintiff argued that Defendant should be equitably estopped from raising a statute of limitations defense.

**{10}** Because the parties submitted materials outside of the pleadings that were not excluded by the state district court, the court was obligated to treat Defendant's motion to dismiss as one for summary judgment. *See* Rule 1-012(B) NMRA (stating that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 1-056 NMRA[.]"). After considering Defendant's motion, "all other pleadings generated by the motion, the applicable law," and the "undisputed facts," the state district court granted Defendant's motion. Notwithstanding that Defendant sought dismissal on res judicata grounds, the state district court held that Plaintiff was "collaterally estopped from proceeding in tort." Further, the court held that, "[i]n any event, whether proceeding in tort or probate, all possible statutes of limitations have run[.]" The district court's statute of limitations ruling was based on the following factual allegations which the court accepted as undisputed and therefore true: (1) Defendant told Plaintiff in 2001 that Mrs. Sandel's testamentary documents had been altered in such a way to eliminate Plaintiff's inheritance rights; (2) Defendant told Plaintiff in March 2009 that there was no trust in which Plaintiff had an interest; (3) Plaintiff was aware of the Trust and knew of its terms since 2009; and (4) Plaintiff threatened litigation to challenge the Trust in 2009. Based on these facts, the district court held that Plaintiff knew or should have learned of his causes of action in 2009, at the very latest. Because Plaintiff did not bring the suit until 2016—seven years later—the district court held that Plaintiff's claims were time-barred and dismissed his complaint with prejudice. This appeal followed.

## DISCUSSION

**{11}** Plaintiff makes three arguments on appeal. First, Plaintiff contends that the district court improperly held that the Federal Suit precluded him from his bringing tort claims in state district court because the elements of collateral estoppel were not met. Second, Plaintiff contends that he timely brought his claims pursuant to Section 45-1-106 of the Probate Code because he did not discover Defendant's purported forgeries until 2015. Lastly, Plaintiff claims that Defendant should be equitably estopped from raising the statute of limitations defense. We address each in turn.[2]

---

2Defendant claims that Plaintiff failed to preserve his arguments because he did not raise them in his docketing statement. Defendant is mistaken, however, as cases assigned to the general calendar are no longer restricted to

**Standard of Review**

**{12}** We review orders granting summary judgment de novo. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C). "An issue of fact is 'material' if the existence (or non-existence) of the fact is of consequence under the substantive rules of law governing the parties' dispute." *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 15, 399 P.3d 939 (internal quotation marks and citation omitted).

**{13}** The movant has the initial burden of making a prima facie showing that he is entitled to summary judgment, which constitutes "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). Once the movant establishes this prima facie case for summary judgment, "the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 27, 409 P.3d 930 (internal quotation marks and citation omitted). When attempting to meet this burden, the non-movant cannot rely on allegations or speculation but must present admissible evidence demonstrating the existence of a genuine issue of a material fact. *Id.* "If the non-movant fails to do so, summary judgment, if appropriate, shall be entered against him." *Id.* (internal quotation marks and citation omitted). In determining whether there exists a genuine issue of material fact, "[w]e review the record in the light most favorable to support a trial on the merits, and we construe all reasonable inferences from the record in favor of the party that opposed summary judgment." *Griffin v. Penn*, 2009-NMCA-066, ¶ 7, 146 N.M. 610, 213 P.3d 514 (internal quotation marks and citations omitted).

**{14}** Although our courts view summary judgment with disfavor, *see Romero*, 2010-NMSC-035, ¶ 8, "[t]he Rule 1-056 procedure serves a worthwhile purpose in disposing of groundless claims, or claims which cannot be proved, without putting the parties and the courts through the trouble and expense of full blown trials on these claims." *Kreutzer*, 2018-NMCA-005, ¶ 30 (alteration, internal quotation marks, and citation omitted).

**I. Res Judicata, Not Collateral Estoppel, Bars Plaintiff's Tort Claims**

**{15}** Plaintiff first challenges the district court's holding that Plaintiff is collaterally estopped from proceeding with his tort claims. Specifically, Plaintiff argues, among other

---

briefing only those issues raised in the docketing statement. *See* Rule 12-318(A)(1) NMRA (providing that "[t]he appellant may raise issues in addition to those raised in the docketing statement or statement of the issues unless the appellee would be prejudiced"). Defendant does not claim that he would be prejudiced, and we therefore proceed to address Plaintiff's arguments.

things, that the doctrine of collateral estoppel does not apply because the causes of action in the two suits are the same. We agree. As our Supreme Court has stated:

> [Collateral estoppel] bars re-litigation of the same issue if (1) the party to be estopped was a party to the prior proceeding, (2) *the cause of action in the case presently before the court is different from the cause of action in the prior adjudication*, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. . . . If any one element is not satisfied issue preclusion is not applicable.

*Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, ¶ 9, 148 N.M. 228, 233 P.3d 362 (emphasis added).[3] Here, although Plaintiff brought two additional claims for breach of fiduciary duty and tortious interference with an expected inheritance that he did not bring in the Federal Suit, all of his causes of action arise out of Defendant's purported forgeries and alleged motivation to wrongfully disinherit Plaintiff. Accordingly, the causes of action in Plaintiff's suits are the same, *cf. Chaara v. Lander*, 2002-NMCA-053, ¶ 15, 132 N.M. 175, 45 P.3d 895 ("[C]laims present the same 'cause of action' for purposes of res judicata if they arise out of the same transaction, or series of connected transactions." (internal quotation marks and citation omitted)); *cf. also Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 27, 98 N.M. 690, 652 P.2d 240 ("What factual grouping constitutes a "transaction[,]" and what groupings constitute a "series[,]" are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (internal quotation marks and citation omitted), *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, ¶ 9, 105 N.M. 57, 728 P.2d 467), and collateral estoppel does not apply to the case at hand. *See Ideal*, 2010-NMSC-022, ¶ 9.

**{16}**     Nonetheless, as we explain, we affirm on the related doctrine of res judicata. Defendant's motion to dismiss accurately argued that res judicata barred Plaintiff's tort claims from being litigated again, and Plaintiff responded to the arguments raised by Defendant. Consequently, we may affirm the district court's judgment on the grounds of res judicata under the right for any reason doctrine. *See Wild Horse Observers Ass'n, Inc. v. N.M. Livestock Bd.*, 2016-NMCA-001, ¶ 29, 363 P.3d 1222 ("An appellate court may affirm a district court if it was right for any reason and affirming on new grounds would not be unfair to the appellant."); *cf. Blea v. Sandoval*, 1988-NMCA-036, ¶ 8, 107 N.M. 554, 761 P.2d 432 (holding that, despite the defendant's erroneous reliance on res

---

3We recognize that because the initial judgment comes from federal court, we apply the federal law of collateral estoppel. *See Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 137 P.3d 577. However, as federal courts, unlike New Mexico courts, do not require that the two suits contain different causes of action, *compare Shovelin v. Cent. N.M. Elec. Coop.*, ¶ 10, 115 N.M. 293, 850 P.2d 996 (1993), *with Smith v. Dinwiddie*, 510 F.3d 1180, 1188 (10th Cir. 2007), we must adhere to New Mexico law in regard to this element. *See Deflon*, 2006-NMSC-025, ¶ 13 (stating that our courts will apply federal preclusion law "unless doing so conflicts with precedent from [our Supreme Court]").

judicata on appeal, collateral estoppel applied and precluded the plaintiffs from claiming superior title).

**{17}** "Res judicata is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter v. Pierce*, 2015-NMSC-002, ¶ 1, 342 P.3d 54. "Because the prior action was in federal court, federal law determines the preclusive effect of a federal judgment." *Moffat v. Branch*, 2005-NMCA-103, ¶ 11, 138 N.M. 224, 118 P.3d 732. Nonetheless, as New Mexico does not diverge from federal law with respect to res judicata, we may employ state precedent. *See Deflon*, 2006-NMSC-025, ¶ 2. "A party asserting res judicata or claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter*, 2015-NMSC-002, ¶ 10. "[W]e review the legal issue presented by the district court's application of res judicata de novo." *Deflon*, 2006-NMSC-025, ¶ 3.

**{18}** Here, Defendant filed a motion for judgment on the pleadings in the Federal Suit, to which Plaintiff filed a written response. *Sandel*, 2016 WL 7535356, at *1. After considering the parties' written submissions, the federal district court found that Plaintiff's tort claims were foreclosed by *Wilson*, 2002-NMCA-105. *Sandel*, 2016 WL 7535356, at *1. Accordingly, the court granted judgment on the pleadings in favor of Defendant, dismissing Plaintiff's tort claims with prejudice.[4] *Id.*

**{19}** Under these circumstances, we conclude the elements of res judicata are present. First, the order granting judgment on the pleadings constituted a final judgment, as it disposed of Plaintiff's tort claims to the fullest extent possible. *Cf. Turner v. First N.M. Bank*, 2015-NMCA-068, ¶ 7, 352 P.3d 661 (concluding that an order dismissing for failure to state a claim constituted a final judgment because "it fully disposed of the rights of the parties, and otherwise disposed of the matter to the fullest extent possible" and "decisively and fully determined that [the p]laintiffs failed to state a cause of action"); *Vill. of Los Ranchos de Albuquerque v. Shiveley*, 1989-NMCA-095, ¶¶ 12-13, 110 N.M. 15, 791 P.2d 466 (concluding that an order dismissing for lack of standing constituted a final judgment because the order "terminated the suit and the proceeding was completely disposed of so far as the court had power to dispose of it"). Second, the district court's order granting judgment on the pleadings expressly considered the merits of whether Plaintiff's tort claims were foreclosed by *Wilson*, 2002-NMCA-105. *See Styskal v. Weld Cty. Bd. of Cty. Comm'rs*, 365 F.3d 855, 858 (10th Cir. 2004) (explaining that an adjudication "on the merits" is one that passes directly on the substance of a particular claim). And lastly, Plaintiff does not dispute that the parties and causes of action (as discussed above) were the same in both suits. As a result, Plaintiff is barred from bringing his tort claims against Defendant.

---

4Although the federal district court's order did not specify whether the dismissal was with prejudice, we presume it was. *Cf. Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) ("Dismissals for failure to state a claim are presumptively with prejudice because they fully dispose of the case.").

**{20}**     Although Plaintiff tailors his argument toward the application of collateral estoppel, we understand his argument in the context of res judicata to be that the Federal Suit was not decided on the merits. Plaintiff points to the federal district court's subsequent order dismissing Defendant's counterclaim in which it stated, "The [c]ourt's order dismissing Plaintiff's tort claims did not resolve the merits of Plaintiff's challenge to various estate planning documents . . . that challenge must be resolved in state court." *Sandel v. Sandel*, No. CV-15-924 MCA/KK, 2016 WL 7510236, at *1 (D.N.M. Aug. 25, 2016). Plaintiff claims that this statement establishes there was no litigation on the merits. Plaintiff is correct that the Federal Suit did not address the merits of Plaintiff's challenge to the Trust, and, therefore he is not precluded by either res judicata or collateral estoppel from challenging the Trust under the Probate Code. However, as discussed above, the federal district court analyzed whether Plaintiff's tort claims were foreclosed by *Wilson*, 2002-NMCA-105, and concluded that they were. *See Sandel*, 2016 WL 7535356, at *1. Thus, the Federal Suit addressed the merits of whether Plaintiff could bring his tort claims against Defendant. *See Styskal*, 365 F.3d at 858.

**{21}**     We note that Plaintiff continues to challenge whether he had an adequate remedy under the Probate Code, and consequently, whether the federal district court properly applied *Wilson*. Our task, however, is not to determine whether the federal court arrived at the correct conclusion; our task here is limited to addressing its preclusive effect. *See Concerned Residents of  Santa Fe N., Inc. v. Santa Fe Estates, Inc.*, 2008-NMCA-042, ¶ 17, 143 N.M. 811, 182 P.3d 794 ("The purpose of res judicata is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." (internal quotation marks and citation omitted)); *Moffat v. Branch*, 2002-NMCA-067, ¶ 26, 132 N.M. 412, 49 P.3d 673 ("The essence of res judicata is that litigants are encouraged and afforded a full and fair opportunity to raise issues that exist between them in a single action. There are consequences for the failure to take advantage of this opportunity. If a litigant is able to raise a claim in an action before the action becomes final, but does not do so, the claim is forever barred." (citation omitted)). Accordingly, to the extent that Plaintiff challenges the merits of the Federal Suit, we can offer him no relief.

## II.     Plaintiff's Probate Code Claim is Time-Barred

**{22}**     Plaintiff next challenges the district court's holding that he was time-barred from bringing a claim under the Probate Code. The parties disagree about the statute of limitations applicable to Plaintiff's claim. Plaintiff argues that, pursuant to Section 45-1-106, his claim is not time-barred because he brought it within two years of discovering that Mrs. Sandel's signatures were allegedly forged.[5] Defendant, on the other hand, argues that Section 46A-6-604(A) bars Plaintiff from bringing his claim because it necessarily involves a challenge to the validity of a revocable trust, which must be made, at the latest, within three years of the settlor's death. We need not decide this

---

5Plaintiff also argues that NMSA 1978, Section 37-1-18 (1880) indefinitely tolled his cause of action. However, Section 37-1-18 only applies to limitations periods provided in Chapter 37 of the New Mexico Statutes Annotated, and is therefore inapplicable to Section 45-1-106's limitations period.

issue because even if Plaintiff is correct that he had two years from the time of discovery of the fraud to file his claim under Section 45-1-106, he failed to come forward with competent evidence demonstrating that he could not have reasonably discovered the fraud in 2009. We explain.

**{23}**     New Mexico follows the discovery rule, which provides that a cause of action sounding in fraud does not accrue until the plaintiff "discovers" the fraud. *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 18, 148 N.M. 627, 241 P.3d 628; *see also* NMSA 1979, § 37-1-7 (1880) ("In actions for relief, on the ground of fraud . . . , the cause of action shall not be deemed to have accrued until the fraud . . . shall have been discovered by the party aggrieved."). Section 45-1-106 expressly incorporates this rule into its limitation period, providing that "[a]ny proceeding must be commenced within two years after the discovery of the fraud." "[D]iscovery is defined as the discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of the fraud or other injury." *Wilde*, 2010-NMCA-085, ¶ 18 (alteration, internal quotation marks, and citation omitted). "In the absence of actual knowledge of fraud, a reasonable-person standard will be applied as to whether a plaintiff should have known of the fraud." *Id.* (alteration, internal quotation marks, and citation omitted). If a reasonable person in the plaintiff's position would have made an inquiry leading to the discovery of the fraud, then the plaintiff is said to be on "inquiry notice" and deemed to have discovered the cause of action for purposes of the rule. *See Yurcic v. City of Gallup*, 2013-NMCA-039, ¶ 9, 298 P.3d 500.

**{24}**     Although our courts generally characterize the application of the discovery rule as a jury question, *see id.* ¶ 10, where there are undisputed facts that show that the plaintiff knew or should have become aware of the facts underlying his or her claim by a specific date, the district court may decide the issue as a matter of law. *See, e.g.*, *Brunacini v. Kavanagh*, 1993-NMCA-157, ¶ 30, 117 N.M. 122, 869 P.2d 821. "When a defendant makes a prima facie showing that a claim is time barred, a plaintiff attempting to invoke the discovery rule has the burden of demonstrating that if he or she had diligently investigated the problem he or she would have been unable to discover the facts underlying the claim." *Butler v. Deutsche Morgan Grenfill, Inc.*, 2006-NMCA-084, ¶ 28, 140 N.M. 111, 140 P.3d 532 (alterations, internal quotation marks, and citation omitted); *see also Martinez v. Showa Denko, K.K.*, 1998-NMCA-111, ¶ 22, 125 N.M. 615, 964 P.2d 176 ("Even applying the discovery rule, in order to refute [the d]efendant's prima facie showing that [the p]laintiff filed her lawsuit outside the time limitation of the statute of limitations, it was incumbent upon [the p]laintiff to demonstrate that if she had diligently investigated the problem she would have been unable to discover the cause of her injury."). Here, Plaintiff argues that the district court improperly dismissed his claims as time-barred because factual disputes existed with regard to when he discovered or should have discovered his claim. We disagree.

**{25}**     The exhibits attached to Defendant's motion to dismiss, together with the allegations set forth in Plaintiff's complaint, established the following undisputed facts. Defendant's estate planning attorney met with Plaintiff to go over Mrs. Sandel's will and the Trust on June 5, 2001, including the Trust's disposition provisions. Defendant told

Plaintiff in 2001 that he and Mrs. Sandel "had modified the terms of [Mrs. Sandel]'s testamentary documents such that [Plaintiff] had no inheritance rights, present or future, to any of the assets in [Mrs. Sandel]'s estate." Defendant told Plaintiff in 2009 and 2010 that "there was no trust in which [Plaintiff] had any interest." Plaintiff learned in 2009 that Defendant probated Mrs. Sandel's estate seven years earlier. Also in 2009, Defendant's attorney sent Plaintiff a complete copy of Mrs. Sandel's will, which devised her estate to the Trust. Defendant's attorney sent Plaintiff a copy of the 2001 Restatement in 2009 (including the unnotarized signature page), which Plaintiff admitted receiving in an email. In that same email, Plaintiff asserted that Defendant "repeatedly lied" to Plaintiff about the Trust, telling Plaintiff "on numerous occasions . . . there [was] no trust and then later [telling him] that all of [Mrs. Sandel's] trust [was] in [Defendant's] name." Plaintiff stated that he "of course" planned on challenging the Trust and claimed that Defendant was "liable for damages that have been caused by his neglect and mishandling of an estate that he pretends to be the sole owner of which is not true." To this end, Plaintiff informed Defendant's attorney that he retained an attorney in Farmington and sent a copy of the Trust to his family law attorney in California, giving him or her permission to forward a copy of the Trust to other attorneys who would be interested in representing Plaintiff.

**{26}** The above undisputed facts constituted a prima facie showing that Plaintiff reasonably should have discovered the alleged forgeries by 2009. Plaintiff knew that Defendant and Mrs. Sandel disinherited him by devising Mrs. Sandel's estate to the Trust. Plaintiff had a copy of the allegedly forged 2001 Restatement eliminating his right to collect any of the Trust's multi-million dollar corpus, which was formalized by Defendant's and Mrs. Sandel's unnotarized signatures. Plaintiff believed Defendant had "repeatedly lied" about the Trust and caused Plaintiff damages. Indeed, Plaintiff stated that he planned on challenging the Trust and went so far as to retain an attorney. Under these circumstances, the district court properly determined that a reasonable person would have diligently investigated the validity of a trust he believed was illegally altered. Furthermore, given that the Trust was co-created by someone Plaintiff claims "repeatedly lied" about the Trust, a reasonable person would have investigated the authenticity of Mrs. Sandel's unnotarized signature on the 2001 Restatement. And although it is unclear when Plaintiff received copies of the 1995 Amendment and the 1999 Restatement, a reasonable person in Plaintiff's position would have investigated the authenticity of Mrs. Sandel's signatures on related trust instruments after discovering that her signature on the 2001 Restatement was possibly forged.

**{27}** Once Defendant made this prima facie showing that Plaintiff was on inquiry notice of the alleged forgeries in 2009, it became Plaintiff's burden to demonstrate that if he had diligently investigated the Trust, he would have been unable to discover that Defendant allegedly forged Mrs. Sandel's signatures. *See Butler*, 2006-NMCA-084, ¶ 28; *Martinez*, 1998-NMCA-111, ¶ 22. Plaintiff did not meet this burden. Plaintiff's lone support comes from his own affidavit, in which he attested, in relevant part,

> I did not discover that my mother's signatures on the [T]rust instruments at issue in this case were forgeries until the summer of 2015. The signatures

of my mother on the 1995, 1999, and 2001 [T]rust instruments here in dispute looked similar enough to hers that I did not question them when I saw them. . . . Although in 2009 I sent an e[-]mail threatening to challenge the [T]rust instruments in court, I did so merely because I was upset that my inheritance rights had been virtually eliminated. I had no reason to believe at that time that my mother's signature had been forged."

**{28}** Neither the pleadings attached to Plaintiff's response, nor the statements in his affidavit (including the one above) create a genuine dispute of material fact sufficient to demonstrate that he was unable to reasonably have discovered his cause of action within the statute of limitations period. Plaintiff's statement that he did not question Mrs. Sandel's signatures because they looked "similar enough," does not explain why Plaintiff could not have performed a reasonably diligent investigation in order to discover whether he had a claim in 2009 or why he could not have discovered his claim had he performed such an investigation. Importantly, Plaintiff did not provide any facts to establish why he could not have hired a handwriting expert in 2009 when he received the trust documents and threatened to challenge the Trust with the assistance of multiple attorneys. Indeed, Plaintiff provides no facts at all—disputed or not—to explain why he did not investigate his potential claims in 2009, and what prompted him to ultimately hire the handwriting expert when he finally did.

**{29}** Since the undisputed facts established that Plaintiff was on inquiry notice, it was incumbent upon him to proffer competent evidence sufficient to establish that an objectively reasonable person's diligent investigation would not have revealed the facts on which Plaintiff relies in bringing his claim. *See Butler*, 2006-NMCA-084, ¶ 28; *Martinez*, 1998-NMCA-111, ¶ 22. Plaintiff did not do this. We, therefore, conclude as a matter of law, based on the undisputed material facts that Plaintiff knew or with reasonable diligence should have known of Defendant's purported forgeries in 2009. *See Brunacini*, 1993-NMCA-157, ¶ 30. Accordingly, the district court properly dismissed Plaintiff's claim, as he brought suit more than two years after 2009. We reject Plaintiff's argument that our holding would impose too high a "standard of care" on disinherited heirs because it would require "every disinherited heir to hire forensic examiners . . . when they are merely put on notice that they were simply disinherited through a genuine signature." Our holding today is not that an heir must hire a handwriting expert to investigate the signatures on testamentary documents in every case of disinheritance; it is simply that Plaintiff failed to meet his burden to demonstrate why a disinherited heir in these specific circumstances could not have discovered the alleged forgery after a reasonably diligent investigation.

**{30}** Finally, Plaintiff argues that the district court's ruling was premature because Plaintiff did not have the benefit of discovery. We recognize that "[i]t is generally inadvisable to grant summary judgment before discovery has been completed." *Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶ 17, 146 N.M. 520, 212 P.3d 408. Plaintiff, however, never requested or filed a Rule 1-056(F) affidavit requesting more time to obtain discovery to support his position. *See id.* ("Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by

affidavit facts essential to justify his position, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."). Although Defendant did not style his motion as one for summary judgment, he attached several exhibits in support of his motion, and Plaintiff did the same in response, including listing his own "statement of undisputed facts." Rule 1-012(C) makes clear that when matters outside the pleading are included with a motion to dismiss, the motion is to be treated as one for summary judgment (unless the district court excludes the extraneous evidence). Plaintiff never argued that he needed more time to develop the evidence or to do more discovery. Nor did he file a motion for reconsideration stating that he needed additional discovery to meet his burden to proffer evidence sufficient to create a genuine dispute of fact. Appellate courts do not exist to rescue parties from the consequences of their choices in the district court, and if Plaintiff needed more time to develop evidence, it was incumbent upon him to make this request to the district court. *Cf. Butler*, 2006-NMCA-084, ¶ 38 (rejecting the plaintiff's assertion that he needed more discovery to develop his discovery rule argument because he never made any specific allegations regarding what he hoped to find in discovery). Accordingly, we decline to remand this matter back to the district court so Plaintiff can engage in further discovery.

### III. Plaintiff Is Not Entitled to Equitable Estoppel

**{31}** Lastly, Plaintiff argues that Defendant should be equitably estopped from asserting a limitations defense because he misled Plaintiff by (1) forging Mrs. Sandel's signatures, (2) failing to inform Plaintiff that Mrs. Sandel's estate was probated, and (3) lying about the existence of the Trust. Although Plaintiff raised this argument below, the district court did not explicitly address it in its order. However, by granting Defendant's motion on statute of limitations grounds, the district court necessarily rejected Plaintiff's equitable estoppel claim. After reviewing the record, we conclude the Plaintiff failed to meet his burden to demonstrate the elements of equitable estoppel.[6]

**{32}** "Equitable estoppel prohibits a party from asserting a statute of limitations defense if that party's conduct has caused the plaintiff to refrain from filing an action until after the limitations period has expired." *Little v. Baigas*, 2017-NMCA-027, ¶ 23, 390 P.3d 201 (internal quotation marks and citation omitted). "[T]he party relying on a claim of equitable estoppel has the burden of establishing all facts necessary to prove it . . . [and] must plead the circumstances giving rise to estoppel with particularity" *Id.* ¶ 22 (internal quotation marks and citations omitted). In order to raise equitable estoppel, the

---

[6]Defendant argues that equitable estoppel does not apply under the facts of this case, as Defendant never promised to not plead the statute of limitations, nor did Plaintiff claim that he knew of his cause of action and relied on Defendant's statements of conduct in failing to bring his suit. *See Estate of Brice v. Toyota Motor Corp.*, 2016-NMSC-018, ¶¶ 10-14, 373 P.3d 977 (discussing the differences between the doctrines of equitable estoppel and fraudulent concealment and stating that "the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations" and "equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statement or conduct in failing to bring suit" (internal quotation marks and citation omitted)). Nonetheless, we need not decide this issue given our conclusion that Plaintiff did not demonstrate the elements of equitable estoppel.

plaintiff must demonstrate that the defendant: "(1) concealed material facts, falsely represented material facts, or made representations of fact different or inconsistent with later assertions in court; (2) had an intent or expectation that such conduct would be acted upon by the plaintiff; and (3) possessed either actual or constructive knowledge of the real facts." *Id.* ¶ 24 (internal quotation marks and citation omitted). Additionally, the plaintiff must demonstrate that he or she: "(1) lacked both the knowledge and the means of acquiring knowledge of the truth as to the facts in question; (2) relied on the defendant's conduct; and (3) acted upon that conduct in a way that prejudicially altered his position." *Id.* (internal quotation marks and citation omitted).

**{33}** Thus, in order to raise a claim for equitable estoppel in regard to asserting a statute of limitations defense against Plaintiff's claim under Section 45-1-106, Plaintiff was required to demonstrate, among other things, that Defendant's conduct caused Plaintiff to refrain from filing his claim within two years of discovery of the fraud. *See* § 45-1-106(A) (providing that any person may obtain "appropriate relief" within two years of discovering the fraud); *Little*, 2017-NMCA-027, ¶ 23. Plaintiff failed to do this. Although (according to Plaintiff) Defendant concealed the existence of the Trust and the fact that Mrs. Sandel's estate had been probated for some years, it is undisputed that Plaintiff learned of the estate's probate and obtained a copy of 2001 Restatement in 2009. Plaintiff cannot point to any actions by Defendant beyond 2009 that caused Plaintiff to refrain from filing his action within two years. While Plaintiff claims he did not know that Mrs. Sandel's signature was allegedly forged at that point, he failed to demonstrate that Defendant took any actions to prevent Plaintiff from investigating Mrs. Sandel's signatures after 2009. Accordingly, Plaintiff's claim for equitable estoppel must fail.

**CONCLUSION**

**{34}** For the foregoing reasons, we affirm the district court's dismissal of Plaintiff's claims and remand for further proceedings on Defendant's remaining counterclaim for malicious abuse of process.

**{35}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JULIE J. VARGAS, Judge**