**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

JOHN ELLING,

    Plaintiff - Appellant,

v.

HONG CAI; ROBERT BRUCE CARY,
a/k/a R. Bruce Cary, a/k/a Robert Cary;
MESA BIOTECH INC.; MESA TECH
INTERNATIONAL, INC.,

    Defendants - Appellees.

No. 21-2045
(D.C. No. 1:20-CV-00306-JHR-JFR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

John Elling appeals from a district court order that granted the defendants' motion

for judgment on the pleadings and dismissed his shareholder lawsuit on the basis of claim

preclusion. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Elling and Defendants Hong Cai and Robert Bruce Cary founded Mesa Tech International, Inc. (MTI), a molecular diagnostics company in Los Alamos, New Mexico. In 2010, Mr. Elling resigned from MTI, but he retained shares of MTI's common stock "represent[ing] 8.9% of the company." Aplt. App., Vol. II at 17.

In 2015, Ms. Cai and Mr. Cary merged MTI into Mesa Biotech, Inc. ("Mesa"), a California business that "designs, develops, manufactures and commercializes next generation molecular diagnostic immunoassay tests for various infectious diseases." *Id.*, Vol. I at 36. As a result of the merger, MTI ceased to exist, and Mr. Elling became a minority shareholder in Mesa.

In August 2018, Mesa notified Mr. Elling that it had "twice amended its certificate of incorporation to increase its total number of shares, amended its bylaws, adopted a new equity incentive plan, increased its number of directors, and entered into unspecified indemnification agreements with all of its directors." *Id.*, Vol. II at 17. In response, Mr. Elling wrote Mesa, raising concerns with the merger, the amendments to the company's articles of incorporation and bylaws, the company's relocation, and the "changes to its stock plan." *Id.* at 18. Also, Mr. Elling asked to inspect the company's books and records. Mesa declined to address Mr. Elling's concerns and refused to allow an inspection.

In May 2019, Mr. Elling sued Mesa, MTI, Ms. Cai, and Mr. Cary in New Mexico state court. *Elling v. Mesa Biotech, Inc.*, D-101-CV-2019-1269 (1st Jud. Dist. Ct. N.M. filed May 7, 2019) (*Elling I*). As relevant here, he alleged the defendants breached their

2

fiduciary duties by not notifying him about, or allowing him to vote on, the merger and the changes to the certificate of incorporation, bylaws, and stock plan. Mr. Elling also alleged that the defendants committed shareholder oppression by diminishing his ownership interest in the company. Further, he alleged the defendants committed breach of contract and breach of the covenant of good faith and fair dealing "by virtue of [the] merger, issuance of additional stock, and changing stock plans." Aplt. App., Vol. II at 19. Finally, he protested the defendants' refusal to allow him to inspect Mesa's books and records. The defendants removed the case to federal court, citing diversity jurisdiction. *See Elling v. Mesa Biotech, Inc.*, No. 1:19-cv-00547-LF-SCY (D.N.M. removed June 13, 2019).

In September 2019, Mesa provided Mr. Elling a "capitalization table," which showed that Ms. Cai and Mr. Cary had received stock options from Mesa in January 2014 and March 2018. *Id.*, Vol. II at 136; *see also id.* at 239. When Mr. Elling obtained the table, "it was apparent that there had been two interested transactions" that "reduced the economic value and voting power of [his] shares by approximately one third." *Id.* at 136. Discovery in December 2019 gave Mr. Elling access to Mesa's books and records. Mr. Elling did not, however, seek leave to file an amended complaint to include any newly discovered instances of alleged wrongdoing.

In March 2020, the defendants moved for summary judgment on all of Mr. Elling's claims. Mr. Elling opposed summary judgment, but limited his arguments to the defendants' failure to hold a merger vote and provide corporate books and records.

In April 2020, while the defendants' summary-judgment motion was still pending, Mr. Elling filed a new lawsuit in federal court against the same defendants. *See Elling v. Cai*, No. 1:20-cv-00306-JHR-JFR (D.N.M. filed Apr. 3, 2020) (*Elling II*). He alleged that Ms. Cai and Mr. Cary had "reduced the cash value and the voting power of [his] interest in MTI" by giving themselves "an additional 2,000,000 options in MTI" stock in January 2014 and again in March 2018, each time without independent board approval and conformity with the operative equity-incentive plan. Aplt. App., Vol. I at 19, 20. He complained that Ms. Cai and Mr. Cary's "self-dealing diluted the value of [his] . . . shares of common stock by approximately one third." *Id.* at 22. He also complained that the defendants did not notify shareholders of, or hold a vote on, MTI's merger with Mesa. Mr. Elling claimed the defendants were liable for breach of fiduciary duty, aiding and abetting each other in those breaches, and shareholder oppression.

Next, Mr. Elling moved to voluntarily dismiss *Elling I* or, alternatively, to consolidate it with *Elling II*. But the district court denied the motion, ruling that dismissal or consolidation would prejudice the defendants by requiring that they recommence their defense in a new lawsuit, despite completing discovery and moving for summary judgment in the original case, and "would deprive Defendants of any preclusive effect a ruling on the motion for summary judgment might have." *Id.*, Vol. II at 182. On the same day, the district court also granted the defendants' summary-judgment motion, ruling that Mr. Elling failed to show any injury, including to the valuation of his shares, from MTI's merger with Mesa or his lack of access to corporate books and records.

4

Armed with that summary-judgment ruling, the defendants moved in *Elling II* for judgment on the pleadings due to claim preclusion. They argued that in the new case, Mr. Elling "set[ ] the same factual backdrop . . . as [*Elling I*], continue[d] to complain about the merger and level of information he . . . received from the company since his resignation, and set[ ] forth an identical shareholder oppression claim." *Id.*, Vol. I at 43. Mr. Elling opposed the motion, arguing that when he filed *Elling I*, he was unaware of the 2014 and 2018 option transactions because the defendants had concealed the company's records, and therefore, he lacked a full and fair opportunity to litigate those claims in *Elling I*.

Meanwhile, back in *Elling I*, Mr. Elling moved under Federal Rule of Civil Procedure 60(b) to set aside the district court's judgment. He argued that if the defendants were successful in obtaining a judgment on the pleadings in *Elling II*, he would not have a forum in which to litigate the 2014 and 2018 options transactions. The district court denied Mr. Elling's motion, stating that his decision to contest those transactions in a new lawsuit, *Elling II*, rather than to include them in *Elling I* as part of an amended complaint, was a "calculated litigation strategy." *Id.*, Vol. II at 247. Mr. Elling did not appeal.

Finally, roughly six months later in *Elling II*, the district court granted the defendants' motion for judgment on the pleadings. The district court reasoned that Mr. "Elling's claims are barred [by the doctrine of claim preclusion] because both suits arise out of a common nucleus of operative fact involving Defendants Cai and Cary's alleged mishandling of company affairs from 2010 to the present." *Id.*, Vol. I at 105.

5

The district court rejected Mr. Elling's assertion that he lacked a full and fair opportunity to litigate the 2014 and 2018 options transactions because "he became aware of the basis of the new claims before the end of discovery in *Elling I* yet he failed to ask that Court to find good cause to allow him to amend his pleadings." *Id.* at 107.

## DISCUSSION
### I.  Standards of Review

We review de novo a district court's grant of a motion for judgment on the pleadings brought under Federal Rule of Civil Procedure 12(c).  *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1302 (10th Cir. 2021).  To withstand a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1302-03 (internal quotation marks omitted).

### II.  Claim Preclusion

To determine "the claim-preclusive effect of a federal diversity judgment," we "adopt the law that would be applied by state courts in the State in which the federal diversity court sits." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002) (internal quotation marks omitted).  Thus, we follow New Mexico law, but "New Mexico does not diverge from federal law with respect to [claim preclusion]." *Sandel v. Sandel*, 463 P.3d 510, 518 (N.M. App. 2020).[1]

---

[1] New Mexico uses the terms claim preclusion and res judicata "interchangeably." *Fed. Nat'l Mortg. Ass'n v. Chiulli*, 425 P.3d 739, 744 (N.M. App. 2018).  "For purposes of clarity[,] this court employs the term claim preclusion instead of res judicata." *Johnson v. Spencer*, 950 F.3d 680, 693 n.3 (10th Cir. 2020) (brackets and internal quotation marks omitted).

Claim preclusion "promote[s] efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter v. Pierce*, 342 P.3d 54, 55 (N.M. 2015). "A party asserting . . . claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Id.* at 57.[2] Mr. Elling does not dispute that claim-preclusion elements (1), (2), and (3) are met. Instead, he argues that the causes of action in *Elling I* and *Elling II* are not the same. We disagree.

---

[2] Mr. Elling contends the district court erred by granting the defendants' motion for judgment on the pleadings based on claim preclusion because the defendants did not plead claim preclusion in their answer. The defendants respond that when they filed their answer, *Elling I* had not progressed to a final judgment, so the affirmative defense of claim preclusion was not yet ripe.

"As a general rule, a defendant waives an affirmative defense by failing to plead it." *Burke v. Regalado*, 935 F.3d 960, 1040 (10th Cir. 2019). But a defendant may raise "an affirmative defense for the first time in a post-answer motion if the defense is raised in sufficient time that there is no prejudice to the opposing party merely because of the delay." *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006) (internal quotation marks omitted).

Mr. Elling does not argue he was prejudiced by the defendants' failure to plead claim preclusion in their *Elling II* answer. Nor could he. The defendants first raised claim preclusion in their opposition to Mr. Elling's motion to voluntarily dismiss *Elling I* or consolidate it with *Elling II*. Specifically, they objected that Mr. Elling was attempting "to avoid the potentially preclusive effect the Court's ruling in this case could have in his second case." Aplt. App., Vol. II at 149. And in *Elling II*, the defendants moved for judgment on the pleadings based on claim preclusion. Mr. Elling fully addressed that defense in his opposition brief and was not prejudiced. *See, e.g.*, *Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004) ("The defendants raised the [affirmative defense] in their motion for judgment on the pleadings, and here it does not appear that [the plaintiff] was surprised in any way, as might happen when a party waits until shortly before trial to raise a new defense.").

7

"Both the Tenth Circuit and New Mexico have adopted the transactional approach in analyzing the single-cause-of-action element of [claim preclusion]." *Id.* "The causes of action need not be identical in the sense that they raise the same claims based on the same facts." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1151 (10th Cir. 2006) (internal quotation marks omitted). Rather, "[t]he transactional approach considers all issues arising out of a common nucleus of operative facts as a single cause of action." *Potter*, 342 P.3d at 57 (internal quotation marks omitted); *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017) ("[A] cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence." (internal quotation marks omitted)). "The facts comprising the common nucleus should be identified pragmatically, considering (1) how they are related in time, space, or origin, (2) whether, taken together, they form a convenient trial unit, and (3) whether their treatment as a single unit conforms to the parties' expectations or business understanding or usage." *Potter*, 342 P.3d at 57 (internal quotation marks omitted).

Two matters are at the core of both *Elling I* and *Elling II*: the dilution of Mr. Elling's stock ownership and the merger of MTI into Mesa. Those matters present nearly identical allegations surrounding corporate governance, fiduciary duties, and transparency in both cases. Indeed, all the actions challenged in *Elling II* appear to have occurred before the 2019 filing of *Elling I*. The stock options were issued in 2018 and 2014, and the merger occurred in 2015. Although *Elling II* provides more specificity regarding the precise manner in which Mr. Elling's stock shares were allegedly diluted

8

(issuance of stock options to Ms. Cai and Mr. Cary on two occasions), the stock-related allegations in both cases are related in time, space, and origin. In particular, *Elling I* was prompted by Mesa's notification to Mr. Elling in August 2018 that it had "*twice* amended its certificate of incorporation *to increase its total number of shares*, amended its bylaws, *adopted a new equity incentive plan*, increased its number of directors, and entered into unspecified indemnification agreements with all of its directors." Aplt. App., Vol. II at 17 (emphases added). The fact that Mr. Elling became aware of the method and amount of stock dilution only after filing *Elling I* does not change the fact that *Elling II* originated from the same common nucleus of operative facts as *Elling I*. And given that commonality, Mr. Elling's stock-dilution allegations formed a single, convenient trial unit that was available to be litigated in *Elling I*. In short, *Elling II* involved the same series of contested transactions as *Elling I*.[3]

---

[3] Mr. Elling asserts that "*Elling I* was a books and records action designed to get a court order compelling the inspection of corporate records, which would then form the basis of substantive claims against Defendants." Aplt. Opening Br. at 34. That assertion overlooks the multiple allegations and claims in *Elling I* targeting the merger and dilution of his stock ownership. *See* Aplt. App., Vol. II at 18-19 (breach of fiduciary duty by not "allow[ing] him to vote on the merger" and "failing to inform him or hold a vote on the changes to the company's . . . stock plan"); *id.* at 19 (shareholder oppression by "diminish[ing] . . . and destroy[ing] [his] minority interests in the company"); *id.* (breach of contract/covenant of good faith "by virtue of [the] merger, issuance of additional stock, and changing stock plans").
   Mr. Elling also asserts that his "claims relating to the 2014 and 2018" stock-option grants "did not accrue until *after* [he] filed *Elling I*." Aplt. Opening Br. at 19. The import of this assertion is unclear. First, the assertion is based on the accrual of claims for purposes of New Mexico's statute of limitations—a matter that is not at issue here. Second, when applying the transactional approach, "we focus on the underlying facts rather than the legal theories relied on in the first action." *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 314 P.3d 698, 701 (N.M. App. 2013).

But even if all the claim-preclusion elements are met, the doctrine will not apply if the plaintiff did not have a full and fair opportunity to litigate in the prior action. *Potter*, 342 P.3d at 59; *accord Lenox MacLaren Surgical Corp.*, 847 F.3d at 1243 ("[E]ven where the requisite elements of claim preclusion are present, its application is inappropriate if the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit." (internal quotation marks omitted)).

Citing, among other things, this court's decision in *Lenox MacLaren Surgical Corp.*, Mr. Elling argues he lacked a full and fair opportunity in *Elling I* to litigate the stock-option grants. He argues the defendants had concealed Mesa's corporate records and did not provide the company's capitalization table until five months after he filed the case. He appears to acknowledge he could have sought to amend the complaint to ensure the option grants were included in *Elling I*, but he argues that the court's deadline to amend pleadings had passed and nothing required him to seek leave to amend. The law is more nuanced, however.

"[A] plaintiff cannot avoid [amending] his complaint with facts *that are part of the same transaction* asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion." *Lenox MacLaren Surgical Corp., Inc.*, 847 F.3d at 1245 (brackets and internal quotation marks omitted). "A subsequent lawsuit will be allowed only if the facts discovered mid-litigation give rise to *new and independent* claims, not part of the previous transaction." *Id.* at 1244-45 (internal quotation marks omitted).

10

Here, the stock options sued upon in *Elling II* were issued to Ms. Cai and Mr. Cary before *Elling I* was filed, and Mr. Elling discovered their existence just five months after he filed *Elling I*.  Mesa's issuance of those stock options in 2014 and 2018 did not create new and independent claims.  Indeed, the claims in *Elling I* covered "changes to [Mesa's] stock plan" and its "issuance of additional stock," Aplt. App., Vol. II at 18, 19, and were prompted by Mesa's notification in August 2018 that it had twice increased the total number of shares and adopted a new equity-incentive plan.

"Critically, . . . if the plaintiff discovers facts during the litigation that stem from the same underlying transaction, it must [amend] its complaint with any new theories those facts support."  *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1244.  Mr. Elling's failure to seek leave to amend his complaint to specifically include the option grants, and his decision to instead plead them in a separate lawsuit, results in a classic application of claim preclusion.

We are not persuaded otherwise by Mr. Elling's assertion that, given the expiration of the amendment deadline, he "would have been required to show good cause and obtain the [district] [c]ourt's approval to amend his complaint," leaving him "at the mercy of forces outside his control," Aplt. Opening Br. at 28-29.  The latter portion of this contention is incorrect.  "After a scheduling order deadline, a party seeking leave to amend" can show good cause for modifying the scheduling order where, for example, that party "learn[ed] new information through discovery" and acted diligently.  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); *see, e.g.*, *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318

11

F.R.D. 28, 38 (S.D.N.Y. 2016) (finding good cause for plaintiffs' post-deadline amendment where they lacked "sufficient evidence to state a claim . . . until after they received [certain] tax returns . . . and concluded . . . depositions"). Further, an appeal following a final judgment is available to correct any abuse of discretion that occurs when a district court denies leave to amend after expiration of a scheduling order's deadline. *See Gorsuch, Ltd., B.C.*, 771 F.3d at 1240.

## CONCLUSION

We affirm the district court's judgment. We grant Mr. Elling's motion for leave to file two appendices and take judicial notice of the *Elling I* documents. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (observing that this court may judicially notice publicly filed records from "other courts concerning matters that bear directly upon the disposition of the case at hand").

Entered for the Court

Veronica S. Rossman
Circuit Judge

12